UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JUSTIN J.,[1]

      Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

24-CV-1084-LJV
DECISION & ORDER

---

On November 8, 2024, the plaintiff, Justin J. ("Justin"), brought this action under

the Social Security Act ("the Act").  Docket Item 1.  He seeks review of the

determination by the Commissioner of Social Security ("Commissioner") that he was not

disabled.[2]  *Id.*  On February 5, 2025, Justin moved for judgment on the pleadings,

Docket Item 5; on April 18, 2025, the Commissioner responded and cross-moved for

judgment on the pleadings, Docket Item 10; and on May 2, 2025, Justin replied, Docket

Item 11.

---

[1] To protect the privacy interests of Social Security litigants while maintaining
public access to judicial records, this Court will identify any non-government party in
cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order,
Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov.
18, 2020).

[2] Justin applied for both Disability Insurance Benefits ("DIB") and Supplemental
Security Income ("SSI").  One category of persons eligible for DIB includes any adult
with a disability who, based on his quarters of qualifying work, meets the Act's insured-
status requirements.  *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d
Cir. 1989).  SSI, on the other hand, is paid to a person with a disability who also
demonstrates financial need.  42 U.S.C. § 1382(a).  A qualified individual may receive
both DIB and SSI, and the Social Security Administration uses the same five-step
evaluation process to determine eligibility for both programs.  *See* 20 C.F.R.
§§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court denies Justin's motion and grants the Commissioner's cross motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*.  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citation modified) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citation modified) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

interpretation, the Commissioner's conclusion must be upheld.").  But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."  *Johnson*, 817 F.2d at 986.

### DISCUSSION

### I.      THE ALJ'S DECISION

On January 29, 2024, the ALJ found that Justin had not been under a disability from April 1, 2021, through the date of the decision.  *See* Docket Item 3 at 34–35.  The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a).  *See id.* at 22–24.

At step one, the ALJ found that Justin had not engaged in substantial gainful activity since April 1, 2021, his alleged onset date.  *Id.* at 24.  At step two, the ALJ found that Justin suffered from seven severe, medically determinable impairments: "sleep apnea, degenerative disc disease, peripheral neuropathy, depression, anxiety [disorder], bipolar [disorder], and attention deficit hyperactivity disorder (ADHD)."  *Id.*

At step three, the ALJ found that Justin's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See id.* at 25.  More specifically, the ALJ found that Justin's physical impairments did not meet or medically equal listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root), 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), or 1.18 (abnormality of a major joint in

3

any extremity). *Id.* Likewise, the ALJ found that Justin's mental impairments did not meet or medically equal listing 12.04 (depressive, bipolar, or related disorders), 12.06 (anxiety and obsessive-compulsive disorders), or 12.11 (neurodevelopmental disorders). *Id.* In assessing Justin's mental impairments, the ALJ found that Justin was moderately limited in all four domains: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing himself. *Id.* at 25–26.

The ALJ then found that Justin had the residual functional capacity ("RFC")[4] to "perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b)" except that:

> [Justin] is limited to frequent climbing, stooping, kneeling, crouching, [and] crawling; frequent overhead reaching; understanding and carrying out simple instructions and making simple work[-]related decisions; performing repetitive work but not [at a] production pace such as on an assembly line; and interacting frequently with supervisors and co-workers[] but only occasionally with the general public.

*Id.* at 26.

At step four, the ALJ found that Justin had no past relevant work. *Id.* at 33. But given Justin's age, education, and RFC, the ALJ found at step five that Justin could perform substantial gainful activity as a marker, housekeeping cleaner, or small product assembler. *Id.* at 33–34; *see Dictionary of Occupational Titles* 209.587-034, 1991 WL 671802 (Jan. 1, 2016); *id.* at 323.687-014, 1991 WL 672783 (Jan. 1, 2016); *id.* at 739.687-030, 1991 WL 680180 (Jan. 1, 2016). The ALJ therefore found that Justin had

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

not been under a disability from his alleged onset date through the date of the decision. *See* Docket Item 3 at 34; *see also id.* at 22, 24.

## II.    ALLEGATIONS

Justin argues that the ALJ erred in two ways.  *See* Docket Item 5-1 at 11–24. First, he argues that the ALJ failed to account for limitations in the opinions of E. Selesner, Psy.D., and L. Haus, Psy.D.—opinions that the ALJ found "persuasive."  *Id.* at 11–19.  Second, he argues that the ALJ failed to properly evaluate the opinion of Nazim Khan, PA.  *Id.* at 20–24.  For the reasons that follow, this Court disagrees.

## III.    ANALYSIS

### A. Failure to Account for Limitations in Dr. Selesner's and Dr. Haus's Opinions

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022).  But that does not mean that an RFC must "perfectly correspond with any of the opinions of medical sources cited in [an ALJ's] decision," *Matta*, 508 F. App'x at 56, or even be based on opinion evidence, *see Rubin v. Martin O'Malley, Comm'r of Soc. Sec.*, 116 F.4th 145, 155 (2d Cir. 2024).  So long as an ALJ considers all the medical evidence and appropriately analyzes any medical opinions, an RFC consistent with the record is not error.  *See* 20 C.F.R. § 416.945; *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (holding that remand is not necessary "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

On May 9, 2022, Dr. Selesner completed a mental RFC assessment of Justin. *See* Docket Item 3 at 97–101. Dr. Selesner opined that Justin was "[n]ot significantly limited" in understanding, remembering, and carrying out short and simple instructions; performing activities within a schedule, maintaining regular attendance, and being punctual; sustaining an ordinary routine without special supervision; making simple work-related decisions; interacting appropriately with coworkers; maintaining socially appropriate behavior; responding appropriately to change; and being aware of normal hazards and taking appropriate precautions. *Id.* at 98–100. But Dr. Selesner found that Justin had moderate limitations in understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; working with or close to others without being distracted; completing a normal workday and workweek without interruptions; performing at a consistent pace; interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from supervisors; and setting realistic goals and making plans independently. *Id.* at 98–101. Nevertheless, Dr. Selesner concluded that Justin "appear[ed] capable of sustaining attention and responding to changes in the work setting and would appear capable of performing simple tasks." *Id.* at 101.

A few months later, on September 7, 2022, Dr. Haus also completed a mental RFC assessment of Justin. *See id.* at 148–52. Dr. Haus's findings largely mirrored Dr. Selesner's, except that Dr. Haus found Justin to be moderately limited in responding appropriately to changes in the workplace and in being aware of normal hazards and taking appropriate precautions. *Compare id.* at 97–101, *with id.* at 148–51. And like Dr. Selesner, Dr. Haus concluded that Justin "appeare[ed] capable of sustaining attention

6

and responding to changes in the work setting and would appear capable of performing simple tasks." *Id.* at 152.

The ALJ found Dr. Selesner's and Dr. Haus's opinions to be "persuasive" because they were "supported by [Justin's] reports and medical records" and consistent with other opinion evidence. *Id.* at 32. Justin argues that in light of those "persuasive" opinions, the ALJ erred by not including restrictions in the RFC addressing some of their limitations—namely, moderate limitations in "maintain[ing] attention and concentration for extended periods[,] . . . complet[ing] a normal workday and workweek without interruptions[, and] . . . perform[ing] at a consistent pace without an unreasonable number and length of rest periods." Docket Item 5-1 at 15. But that argument is factually incorrect.

First, the RFC restricted Justin to "carrying out simple instructions and making simple work[-]related decisions" and "performing repetitive work." Docket Item 3 at 26. Courts in this Circuit repeatedly have found such restrictions sufficient to account for moderate limitations like those about which Drs. Selesner and Haus opined. *See, e.g.*, *Karl E. v. Comm'r of Soc. Sec.*, 2025 WL 3003714, at *5 n.5 (W.D.N.Y. Oct. 27, 2025) ("[T]he ALJ limited [the p]laintiff to 'simple tasks,' which accounts for [the p]laintiff's moderate difficulty in concentrating, persisting, or maintaining pace."); *Arthur M. v. Saul*, 2021 WL 2309884, at *4 (W.D.N.Y. June 7, 2021) ("[T]he restrictions imposed by the RFC, including that [the] plaintiff can perform only simple and routine tasks . . . are sufficient to account for [the] plaintiff's moderate limitations with regard to completing a normal workday or workweek without interruption as well as performing at a consistent pace without an unreasonable number and length of rest periods."); *see also Denise*

*Marie T.-W. v. Comm'r of Soc. Sec.*, 2024 WL 4162490, at *6 (W.D.N.Y. Sept. 12, 2024) ("Moderate limitations in some or all areas of mental functioning may be accounted for in an RFC by limiting a plaintiff to simple, routine work . . . ."). So the limitations incorporated in the RFC—that Justin could carry out only "simple instructions," make only "simple work[-]related decisions," and perform only "repetitive work"—accounted for the limitations in Dr. Selesner's and Dr. Haus's opinions. *See* Docket Item 3 at 26.

What is more, and as noted above, Drs. Selesner and Haus explicitly found that Justin "appear[ed] capable of sustaining attention and responding to changes in the work setting and would appear capable of performing simple tasks." *Id.* at 101, 152. In other words, both found that he was capable of working if what he did was simple. And Drs. Selesner and Haus both found that Justin "appear[ed] capable of following supervision and relating with co-workers in a setting in which he would not have frequent contact with the public." *Id.* The RFC's limitation to "carrying out simple instructions" and "only occasionally [interacting] with the general public" was therefore more than sufficient to account for Justin's mental health issues. *See id.* at 26.

Justin also argues that the ALJ erred by failing to explain how the RFC accounted for the limitations about which Drs. Selesner and Haus opined. *See* Docket Item 5-1 at 15–16. More specifically, Justin argues that the ALJ "needed to explain how [Justin's] moderate limitations . . . would not result in him being absent, tardy[,] or unable to complete a normal workday more than one day per month." *Id.* at 15. But "[a]n ALJ does not have to state on the record every reason justifying a decision," *Valdez-Ocasio v. Kijakazi*, 2023 WL 3573761, at *1 (2d Cir. May 22, 2023) (quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012)); rather, so long

as an ALJ's decision provides "an adequate basis for meaningful judicial review . . . and is supported by substantial evidence," there is no error, *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). And that is precisely the case here.

In sum, the ALJ crafted an RFC that was consistent with the opinions of Drs. Selesner and Haus and with the medical evidence in the record. Indeed, the ALJ addressed the limitations in those opinions and explicitly accounted for them in the RFC. *See* Docket Item 3 at 26, 32. Justin's first argument therefore lacks merit.

## B. Failure to Evaluate PA Khan's Opinion

For claims filed on or after March 27, 2017, such as Justin's, an ALJ no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." *Angela H.-M. v. Comm'r of Soc. Sec.*, 631 F. Supp. 3d 1, 7 (W.D.N.Y. 2022) (citation modified) (quoting 20 C.F.R. §§ 404.1520c(a), 416.920c(a)). Instead, an ALJ evaluates the opinion evidence and "articulate[s] . . . how persuasive she finds the medical opinions in the case record." *Id.*

The regulations list five factors for an ALJ to consider when evaluating a medical opinion: (1) the amount of evidence the source presents to support his or her opinion; (2) the consistency between the opinion and the record; (3) the treating provider's relationship with the claimant, including the length, frequency, purpose, and extent of the relationship; (4) the treating provider's specialization; and (5) any other factors that "tend to support or contradict" the opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). An ALJ is required to "explain how [she] considered the supportability and consistency factors"

9

because they are "the most important factors," and "may, but [is] not required to, explain how [she] considered the [remaining] factors." *Id.* § 404.1520c(b)(2).

With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[] or prior administrative medical finding[], the more persuasive the medical opinion[] or prior administrative medical finding[] will be." *Id.* § 404.1520c(c)(1). As to consistency, "[t]he more consistent a medical opinion[] or prior administrative medical finding[] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] or prior administrative medical finding[] will be." *Id.* § 404.1520c(c)(2). In other words, supportability addresses how well a source explains and provides evidence for his or her opinion, and consistency addresses whether an opinion fits with the rest of the medical record. *See Spottswood v. Kijakazi*, 2024 WL 89635, at *1 (2d Cir. Jan. 9, 2024).

On September 5, 2023, PA Khan completed a mental RFC questionnaire on Justin's behalf. *See* Docket Item 3 at 712–16. PA Khan opined that Justin was "[l]imited but satisfactory" in understanding and remembering short and simple instructions; making simple work-related decisions; asking simple questions and requesting assistance; and dealing with normal work stress. *Id.* at 714. But PA Khan found Justin to be "[s]eriously limited" in carrying out short and simple instructions; sustaining an ordinary routine without special supervision; working with or close to others without being distracted; completing a normal workday and workweek without interruption; getting along with coworkers without distracting them or exhibiting extreme behaviors; responding appropriately to change; being aware of normal hazards and

10

taking appropriate precautions; setting realistic goals and making plans independently; interacting appropriately with the general public; and maintaining socially appropriate behavior. *Id.* at 714–15. And PA Khan found that Justin was "[u]nable to meet competitive standards" in maintaining attention for two-hour segments; maintaining regular attendance and being punctual; performing at a consistent pace; accepting instructions and responding appropriately to criticism from supervisors; understanding, remembering, and carrying out detailed instructions; and dealing with the stress of semiskilled and skilled work. *Id.*

The ALJ found PA Khan's opinion "unpersuasive." *Id.* at 32. In doing so, the ALJ first addressed whether the opinion was well supported and concluded that it was not. *Id.* For example, the ALJ noted that "the questionnaire instructed PA Khan to 'include the medical/clinical findings that support' any mental aptitude assessment where the claimant was 'seriously limited' or worse" but that "[t]hose portions were left blank." *Id.* The ALJ found that "[t]his lack of detail significantly undermine[d] the supportability of PA Khan's opinion," and she observed that "[w]here detail d[id] exist, it essentially only exist[ed] to say that [Justin would] be evaluated by other providers." *Id.* Moreover, the ALJ noted that "PA Khan did include a medication list, but that list lack[ed] any information on the reasoning behind the prescriptions or other similar detail that could bolster [the] supportability of the opinion." *Id.* So contrary to Justin's argument, *see* Docket Item 5-1 at 21–23, the ALJ explicitly considered the supportability factor as required, *see Nunez v. Comm'r of Soc. Sec.*, 164 F.4th 60, 73 (2d Cir. 2025) (describing "supportability" as "how well the objective medical evidence and explanations given support the medical source's opinion").

11

The ALJ also addressed the opinion's consistency with the rest of the record. For example, she explicitly found that "PA Khan's opinion [wa]s . . . inconsistent with the opinion of [Janine Ippolito, Psy.D.,] and the findings of Drs. Selesner and Haus," Docket Item 3 at 32, opinions that the ALJ noted were consistent with each other and persuasive, *see id*. at 31–32. The ALJ likewise found that PA Khan's opinion was "inconsistent with the medical evidence of record which show[ed] generally normal mental status exam results" and with Justin's "reported work history." *Id.* So the ALJ explicitly and sufficiently addressed consistency as well.

Justin argues that the ALJ improperly "reli[ed] on 'normal' mental status examinations" to discount PA Khan's opinion. Docket Item 5-1 at 22. But even if that were true, that was not the only inconsistency that the ALJ found between PA Khan's opinion and the rest of the medical record. Indeed, and more important, the ALJ also found PA Khan's opinion to be inconsistent with significant and persuasive medical opinion evidence. *See* Docket Item 3 at 32.

And PA Khan's opinion was inconsistent with the opinions of other medical professionals. For example, Dr. Ippolito found, among other things, that Justin had no limitations in sustaining an ordinary routine and regular attendance and only mild limitations in understanding, remembering, and applying complex instructions; interacting appropriately with others; sustaining concentration and performing at a consistent pace; and being aware of normal hazards and taking appropriate precautions. *Id.* at 703–04. Likewise, Drs. Selesner and Haus found Justin to be no more than moderately limited in any area of mental functioning. *See id.* at 97–101, 148–52. Certainly, those opinions were inconsistent with PA Khan's finding that Justin

was "[s]eriously limited" or "[u]nable to meet competitive standards" in nearly all areas.[5] *See id.* at 714.  So the ALJ did what was required of her, concluding that PA Khan's opinion was unsupported, inconsistent, and therefore not persuasive.  *See id.* at 32.

In sum, the ALJ appropriately reviewed the supportability and consistency of PA Khan's opinion in light of PA Khan's own records and the other evidence in the record. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("[A]n ALJ is free to . . . choose between properly submitted medical opinions.").  And while Justin may disagree with the weight the ALJ assigned to each opinion and medical record, it is not the function of this Court to re-weigh evidence or determine *de novo* whether Justin is disabled.  *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Because the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole," *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013), and because the ALJ did just that, her reliance on opinions other than PA Khan's was supported by substantial evidence.  This Court will not second-guess it.  *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

## CONCLUSION

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error.  Therefore, and for the reasons stated above, Justin's motion for judgment on the pleadings, Docket Item 5, is DENIED, and the

---

[5] The mental RFC questionnaire completed by PA Khan defined "[s]eriously limited" as "frequently be[ing] less than satisfactory in any work setting" and "[u]nable to meet competitive standards" as being unable to "satisfactorily perform [an] activity independently, appropriately, effectively[,] and on a sustained basis in a regular work setting."  Docket Item 3 at 714.

Commissioner's cross motion for judgment on the pleadings, Docket Item 10, is

GRANTED.  The complaint is DISMISSED, and the Clerk of Court shall close the file.


SO ORDERED.

Dated:      April 22, 2026
            Buffalo, New York


_/s/ Lawrence J. Vilardo_
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

14